Alvie NELSON *v.* TIMBERLINE INTERNATIONAL, INC.,
Crum & Forster, Carrier, and Second Injury Fund

CA 96–380                                    942 S.W.2d 260

Court of Appeals of Arkansas
Division II
Opinion delivered April 2, 1997

*Dodds, Kidd, Ryan & Moore*, by: *Judson C. Kidd*, for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *Tim A. Cheatham*, for appellee/cross-appellants Timberline International, Inc., and Crum & Foster.

*Judy W. Rudd*, for appellee Second Injury Fund.

WENDELL L. GRIFFEN, Judge. In this workers' compensation appeal, appellant challenges the decision by the Workers' Compensation Commission that he sustained a 30% decrease to his earning capacity above the permanent physical impairment established by the medical evidence. Appellant argues that the Commission should have found that he is permanently and totally disabled, or that he is entitled to a larger award for the decrease in his wage-earning capacity than the Commission rendered. Appellees Timberline International, Inc. (the employer), and Crum & Forster (its workers' compensation insurance carrier), contend that the Commission's decision is supported by substantial evidence. However, they have cross-appealed that portion of the Commission's decision that held the Second Injury Fund not liable for the permanent disability benefits because appellant's present condition resulted from the cumulative effect of successive injuries in the same employment. *See McCarver v. Munro-Clear Lake Footwear*, 289 Ark. 509, 715 S.W.2d 429 (1986), and *Riceland Foods, Inc. v. Second Injury Fund*, 289 Ark. 528, 715 S.W.2d 432 (1986). As to the appeal, we find no error and hold that the Commission's wage-earning diminution decision is supported by substantial evidence. Because we do not believe ourselves able to overrule the decisions by the Arkansas Supreme Court in *McCarver* and *Riceland Foods*, we also affirm as to the cross-appeal. Nevertheless, we believe that the "same employer" defense that was judicially created to shield the Second Injury Fund from liability deserves reconsideration by the supreme court in light of serious policy factors that we raise in our opinion.

Appellant worked as a mechanic for eighteen years. In 1981 he began working for Timberline International as a diesel mechanic. Most of his work involved heavy manual labor. He received a compensable back injury in 1988 while torquing the head of an engine, and eventually underwent back surgery resulting in a permanent impairment rating of fifteen percent to the

body as a whole. When he returned to work after surgery, the employer assigned him to lighter work as a mechanic for several months, and then placed him in its parts department where he worked for a year or so before returning to work as a diesel mechanic. On March 31, 1992, while torquing the head bolts on an engine, he suffered another back injury. That injury resulted in surgery by an orthopedist, Dr. Stuart McConkie, in June 1992, and additional surgery by a neurosurgeon, Dr. Thomas Fletcher, in September 1992. He has not returned to work or attempted to return to work since the March 31, 1992, back injury, and Dr. Jim Moore, another neurosurgeon, has assessed his permanent impairment from the 1992 injury to be an additional fifteen percent to the body as a whole.

■ Appellant argued before the Commission that he is permanently and totally disabled due to the March 31, 1992, injury; alternatively, appellant contended that the decrease to his wage-earning capacity greatly exceeded the fifteen percent impairment assigned to that injury. The Commission found that appellant had suffered a 30% decrease to his wage-earning capacity above the fifteen percent physical impairment, and rejected appellant's claim of permanent and total disability. Of course, our standard of review requires that we affirm the Commission's decision if it is supported by substantial evidence, meaning evidence that a reasonable person might accept as adequate to support a conclusion. *Christian v. Arkansas Crane & Crawler,* 55 Ark. App. 306, 935 S.W.2d 1 (1996). We do not reverse the Commission unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Id.*

■ Appellant argues that the Commission should have found him permanently and totally disabled under the odd-lot doctrine. According to that doctrine, an employee who is injured to the extent that he can only perform services that are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist may be classified as totally disabled. *Moser v. Arkansas Lime Co.,* 40 Ark. App. 108, 842 S.W.2d 456 (1992), supp. op., 40 Ark. App. 113, 846 S.W.2d 188 (1993). However, an injured worker who relies upon that doctrine has the burden of making a *prima facie* showing of being in the "odd-lot"

category based upon the factors of permanent impairment, age, mental capacity, education, and training. If the worker does so, the employer then has the burden of showing that some kind of suitable work is regularly and continuously available to him. *Walker Logging v. Paschal*, 36 Ark. App. 247, 821 S.W.2d 786 (1992).

■ Although appellant argues that he made a *prima facie* case of entitlement to permanent total disability benefits under the odd-lot doctrine set forth in *Walker Logging v. Paschal, supra*, based on the claim that he cannot work, his treating physicians opined that he can perform light-duty work, including work that involves lifting up to 25 pounds. None of the doctors who treated him for the 1992 injury believe that he is unable to work. Dr. McConkie, the orthopedic surgeon, expressed doubts concerning appellant's physical complaints, and both neurosurgeons (Drs. Fletcher and Moore) concluded that appellant can perform light-duty work. The Commission also received evidence that the employer has attempted to return appellant to light-duty work answering telephones but appellant has not attempted the work. We believe that fair-minded persons presented with this evidence could have concluded, as the Commission did, that appellant was not totally disabled.

■ Appellant's reliance upon the odd-lot doctrine is misplaced. He did not make the *prima facie* showing of substantial inability to engage in regular and continuous employment that would have obligated the employer to produce evidence that some kind of suitable work is regularly and continuously available to him. As already mentioned, appellant's doctors believe that he can perform light-duty work, and they question the validity of his physical complaints. The employer has indicated that appellant could return to light-duty work, but appellant has made no attempt to do so. These facts constitute substantial evidence for the Commission's decision, even under the odd-lot analysis that appellant advocates. These facts also support the Commission's decision awarding permanent partial disability benefits above the extent of appellant's physical impairment equal to 30% to the body as a whole.

██ Appellees contend in their cross-appeal that the Commission erred when it refused to hold the Second Injury Fund liable for the permanent disability benefits awarded to appellant for decreased wage-earning capacity pursuant to the *McCarver* and *Riceland Foods* holdings previously mentioned, and urge us to reverse the Commission and overrule those decisions. *McCarver* and *Riceland Foods* stand for the proposition that the Second Injury Fund is not liable when an employee sustains a subsequent injury while still working for the same employer for whom he was employed when a previous permanent injury was suffered. In *Riceland Foods*, our court announced that if successive injuries in the same employment cause total and permanent disability, then the employer or its insurance carrier is responsible to the disabled employee for all permanent disability benefits; however, if the previous disability or impairment arose out of employment by a different employer, then the Second Injury Fund is liable. *Riceland Foods, supra.*; *see also Death & Permanent Total Disability Trust Fund v. Whirlpool Corp.*, 39 Ark. App. 62, 837 S.W.2d 293 (1992). In *McCarver* and *Riceland Foods* the supreme court affirmed our court's interpretation of what was previously Ark. Stat. Ann. § 81-1313, now codified as Ark. Code Ann. § 11-9-525 (Repl. 1996), and accepted our reasoning that the following language from the statute supported the conclusion that the Fund is not liable for successive injuries that are permanently disabling when the injuries occur in the same employment:

(a)(1) The Second Injury Trust Fund established in this chapter is a special fund designed to ensure that an employer employing a handicapped worker will not, in the event the worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred *while the worker was in his employment*.

(2) The employee is to be fully protected in that the fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined.

(Emphasis added.)

Both our court and the supreme court reasoned that the italicized language from the opening provision of the statute justified the conclusion that where a worker suffers successive injuries that

are permanently disabling while working for the same employer, then that employer should be held liable for the actual disability or impairment sustained by those injuries. The courts in *McCarver* and *Riceland Foods* also believed that employers would reap a windfall subsidy from the Fund if they are relieved of liability for the wage-earning consequences of successive permanent injuries that occur in the same employment. Finally, the courts reasoned that the Fund's solvency could be jeopardized to the possible detriment of permanently disabled workers who would, in the event of Fund insolvency, be unable to recover disability benefits from their employers because the statute specifically prohibited reverter of liability to employers in case of Fund insolvency.

█ Ten years have passed since the decisions in *McCarver* and *Riceland Foods*. The Arkansas General Assembly has enacted several major changes to the Workers' Compensation Law statute during that period, but none of the changes have addressed the "same employer" defense now challenged by appellees in their cross-appeal. Indeed, the Second Injury Fund statute has not been revised since 1981. Given that the General Assembly has known about the "same employer" defense announced in *McCarver* and *Riceland Foods*, we are reluctant to conclude that the defense requires judicial abolition, despite the fact that it was judicially created and has not been legislatively adopted by specific language amending the statute. Our reluctance also is based upon deference to the supreme court, whose decisions we are now asked to overrule. Appellees have cited no authority for the proposition that our court can overrule supreme court decisions, and we know of none.

█ We are also persuaded that Ark. Code Ann. § 11-9-1001 (Repl. 1996) discourages the type of judicial lawmaking that appellees urge us to perform by the following language:

> When, and if, the workers' compensation statutes of this state need to be changed, the General Assembly acknowledges its responsibility to do so. . . . In the future, if such things as the statute of limitations, the standard of review by the Workers' Compensation Commission or courts, *the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed,* those things shall be

addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.

(Emphasis added.)

Inasmuch as appellees are urging that the scope of the workers' compensation law be broadened so that the Second Injury Fund would become liable for the wage-loss disability benefits payable to disabled workers in the event of successive injuries during the same employment, it appears that the court of appeals can offer no assistance due to this language.

Our refusal to act pursuant to appellees' insistence that the "same employer" defense be judicially abolished does not indicate that we believe the defense to be justified by the Workers' Compensation Law. In fact, we perceive serious policy problems that the "same employer" defense presents in addition to our view that the statute does not preclude the Fund from being held liable. The concern that abolition of the "same employer" defense would allow employers to escape liability for disability or impairment that actually occurs while a worker is in its employ appears to arise from a misreading of the statute. Rather than reading Ark. Code Ann. § 11-9-525(a) to refer to *employments* that produce successively disabling injuries, the statute should be read to address the successively disabling injuries. After all, *successive injuries*, not successive employments, is the subject addressed by the statute. If the statute did not intend to cover successive injuries occurring in the same employment as the Fund maintains, subsection (d)(1) makes no sense. It explicitly covers how weekly benefits for disability shall be paid where more than one injury occurs *in the same employment* to cause concurrent and consecutive permanent partial disability. If the statute indeed contemplated that the Fund would never be liable in cases of permanent disability resulting from successive injuries sustained in the same employment, one would think that subsection (d)(1) would be unnecessary.

The "same employer" defense also appears inconsistent with the apparent thrust of the Second Injury statute. The statute repeatedly refers to cases of permanent disability or impairment and provides at subsection (b)(1) that it covers all cases of perma-

nent disability or impairment "where there has been previous disability or impairment." If a "same employer" is to be treated no differently in cases involving successive injuries than it would be treated had there been no successive injuries (the result that the "same employer" defense produces), the language extending the scope of the statute to "all cases of permanent disability or impairment where there has been previous disability or impairment" seems out of place.

We have found no other area of the workers' compensation law that excludes a party from liability based upon the unproven possibility of insolvency, yet this was a stated reason advanced for the "same employer" defense in *McCarver* and *Riceland Foods*. This appears to be the only area of the workers' compensation law where solvency is allowed to determine liability. We have found and been cited to no information that supports the idea that the Second Injury Fund is endangered by any species of claims. Indeed, the Fund is specifically created to only pay claims for permanent disability benefits, including permanent total disability benefits, the most expensive variety of permanent disability benefits.

These concerns persuade us that if the "same employer" defense that the appellate courts created ten years ago is subject to judicial revisiting, the time has come to do so. We encourage appellees to petition the supreme court for review.

Affirmed as to the appeal and the cross-appeal.

ROBBINS, C.J., and ROAF, J., agree.